UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION
CIVIL ACTION NO. 4:20-CV-00129-HBB

SCOTT BURTON                                                                    PLAINTIFF

VS.

KILOLO KIJAKAZI, ACTING COMMISSIONER[1]
SOCIAL SECURITY ADMINISTRATION                                 DEFENDANT

MEMORANDUM OPINION
AND ORDER

BACKGROUND

Before the Court is the complaint (DN 1) of Scott Burton ("Plaintiff") seeking judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g).   Both Plaintiff (DN 15) and Defendant (DN 21) have filed a Fact and Law Summary.   For the reasons that follow, the final decision of the Commissioner is **AFFIRMED**, and judgment is **GRANTED** for the Commissioner.

Pursuant to 28 U.S.C. § 636(c) and FED. R. CIV. P. 73, the parties have consented to the undersigned United States Magistrate Judge conducting all further proceedings in this case, including issuance of a memorandum opinion and entry of judgment, with direct review by the Sixth Circuit Court of Appeals in the event an appeal is filed (DN 13).   By Order entered February 26, 2021 (DN 14), the parties were notified that oral arguments would not be held unless a written request therefor was filed and granted.   No such request was filed.

---

1   Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021.   Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is substituted for Andrew Saul as the defendant in this suit.

<u>FINDINGS OF FACT</u>

Prior to the current application, on January 9, 2015, Plaintiff filed an application for Disability Insurance Benefits (Tr. 15, 80).   In a decision dated October 12, 2017, an administrative law judge found that Plaintiff was not disabled (Tr. 15, 80-93).   Thereafter, Plaintiff filed a request for review by the Appeals Council, but that request was denied (Tr. 15, 99-102).   Subsequently, the matter was brought before the undersigned after Plaintiff filed a complaint in the United States District Court for the Western District of Kentucky, and the judgment was ultimately entered for the Commissioner on April 11, 2019 (Tr. 15, 105-07, 163).   The undersigned's memorandum opinion and order and judgment were not appealed to the Sixth Circuit.

Now, on April 30, 2018, Plaintiff protectively filed another application for Disability Insurance Benefits (Tr. 15, 264-67).   Plaintiff alleges to have become disabled on October 7, 2017, as a result of ankylosing spondylitis, fibromyalgia, depression, diabetes (type 2), sleep apnea, and anxiety (Tr. 15, 119, 140).   These claims were initially denied on July 23, 2018, and the claims were again denied upon reconsideration on September 11, 2018 (Tr. 15, 137-38, 158-60).   At that point, Plaintiff filed a written request for a hearing (Tr. 15, 179-80).   Administrative Law Judge David Peeples ("ALJ") conducted a video hearing from Paducah, Kentucky on August 1, 2019 (Tr. 15, 36-38).   Virtually present at the hearing from Owensboro, Kentucky was Plaintiff and his attorney Sara J. Martin Diaz (<u>Id.</u>).   During the hearing, Robert Bond[2] testified as a vocational expert (Tr. 15, 36-38, 43-44, 67-75).

---

2   The ALJ's determination lists the vocational expert's name as Robert L. Bond (Tr. 15).   However, the transcript from the administrative hearing repeatedly refers to the vocational expert's name as Robert Vaughan (Tr. 36-38, 43-44, 67-75).   The administrative record contains the qualifications of Robert L. Bond (Tr. 354), and no information is present for a Robert Vaughan.   Therefore, when considering this conflict, the undersigned will use the name Robert Bond.

2

At the forefront, the ALJ notes that he must consider Drummond v. Comm'r of Soc. Sec., 126 F.3d 837 (6th Circuit 1997) and Acquiescence Ruling ("AR") 98-4(6), "which direct that the [ALJ] is bound by the previously adjudicated residual functional capacity, absent evidence of medical improvement or deterioration of [Plaintiff]'s condition(s); and Dennard v. Secretary of Health and Human Services, 907 F.2d 598 (6th Circuit 1990) and [AR] 98-3(6), which direct that the [ALJ] is bound by the previously adjudicated findings of a claimant's date of birth, education, or work experience absent new and additional evidence or a change in circumstances" (Tr. 15).

At the first step of the sequential determination, the ALJ found that Plaintiff had not engaged in substantial gainful activity since October 7, 2017, the alleged onset date (Tr. 18).   At the second step, the ALJ determined Plaintiff has the following severe impairments: ankylosing spondylitis, degenerative disc disease, depression, and anxiety (Id.).   The ALJ also found Plaintiff's history of diabetes mellitus, sleep apnea, and fibromyalgia[3] to be nonsevere (Id.).   At the third step, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in Appendix 1, specifically Listings 1.04, 12.04, 12.06, 14.09C, and 14.09D (Tr. 19).

At the fourth step, the ALJ found that Plaintiff has the residual functional capacity (RFC) to perform sedentary work as defined in 20 C.F.R. § 404.1567(a) except for the following limitations: Plaintiff can sit for 45 minutes at one time, and stand/walk 45 minutes at one time in

---

3   The ALJ found Plaintiff's fibromyalgia to not be a severe medically determinable impairment, despite the previous Administrative Law Judge finding the opposite (Tr. 18-19, 83).   The ALJ's opinion differs from the prior determination because "the requirements of SSR 12-2p appear absent from the record" (Tr. 18).   "In the prior claim, it references multiple trigger points over the classic locations for fibromyalgia, which falls short of the diagnostic criteria set out in SSR 12-2p" (Id.).   Moreover, "[t]he current record contains no evidence or diagnosis of fibromyalgia nor does it reflect six or more repeated manifestations of fibromyalgia symptoms as defined in SSR 12-2p" (Tr. 18-19).

combination for an eight-hour workday; occasionally climb ramps, stairs, ladders, ropes and scaffolds; frequently balance and occasionally stoop, kneel, crouch and crawl; Plaintiff needs to avoid concentrated exposure to extreme cold, extreme heat, humidity, wetness, vibration, and pulmonary irritants including fumes, odors, dusts, gases, and poor ventilation; Plaintiff needs to avoid all exposure to hazards such as unprotected heights and moving mechanical parts; Plaintiff can understand, remember and carry out simple, routine tasks for two-hour segments for a full workday; Plaintiff can occasionally (no more than one-third of the time) interact with coworkers, supervisors, and the public; and Plaintiff can adapt to changes in the workplace that are rare or gradually introduced (Tr. 20-21).   The ALJ reviewed the prior Administrative Law Judge's determination and noted some evidentiary differences between the prior determination and now (Tr. 27-28).   Ultimately, the ALJ found that the evidence present does not sufficiently show "significant change" to warrant deviation from the previous Administrative Law Judge's determination and adopted the prior mental and physical RFC findings (Id.).

The ALJ found Plaintiff is unable to perform any past relevant work (Tr. 29).   After this finding, the ALJ went to the fifth step, where the ALJ also considered Plaintiff's RFC, age, education, and past work experience, as well as testimony from the vocational expert, to find that Plaintiff is able to perform other jobs that exist in the national economy (Tr. 30).   Therefore, the ALJ concluded that Plaintiff has not been under a "disability," as defined in the Social Security Act, since October 7, 2017, the alleged onset date, through September 24, 2019, the date of the decision (Tr. 31).

Plaintiff timely filed a request for the Appeals Council to review the ALJ's decision (Tr. 262-63).   The Appeals Council denied Plaintiff's request for review (Tr. 1-3).

4

## CONCLUSIONS OF LAW

### Standard of Review

Review by the Court is limited to determining whether the findings set forth in the final decision of the Commissioner are supported by "substantial evidence," 42 U.S.C. § 405(g); Cotton v. Sullivan, 2 F.3d 692, 695 (6th Cir. 1993); Wyatt v. Sec'y of Health & Human Servs., 974 F.2d 680, 683 (6th Cir. 1992), and whether the correct legal standards were applied.   Landsaw v. Sec'y of Health & Human Servs., 803 F.2d 211, 213 (6th Cir. 1986).   "Substantial evidence exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way."   Cotton, 2 F.3d at 695 (quoting Casey v. Sec'y of Health & Human Servs., 987 F.2d 1230, 1233 (6th Cir. 1993)).   In reviewing a case for substantial evidence, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility."   Cohen v. Sec'y of Health & Human Servs., 964 F.2d 524, 528 (6th Cir. 1992) (quoting Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984)).

As previously mentioned, the Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 1-3).   At that point, the ALJ's decision became the final decision of the Commissioner.   20 C.F.R. §§ 404.955(b), 404.981, 422.210(a); *see* 42 U.S.C. § 405(h) (finality of the Commissioner's decision).   Thus, the Court will be reviewing the decision of the ALJ, not the Appeals Council, and the evidence that was in the administrative record when the ALJ rendered the decision.   42 U.S.C. § 405(g); 20 C.F.R. § 404.981; Cline v. Comm'r of Soc. Sec., 96 F.3d 146, 148 (6th Cir. 1996); Cotton v. Sullivan, 2 F.3d 692, 695-696 (6th Cir. 1993).

The Commissioner's Sequential Evaluation Process

The Social Security Act authorizes payment of Disability Insurance Benefits and Supplemental Security Income to persons with disabilities.  42 U.S.C. § 401 et seq. (Title II Disability Insurance Benefits).   The term "disability" is defined as an

> [I]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months.

42 U.S.C. § 423(d)(1)(A) (Title II); 20 C.F.R. § 404.1505(a); Barnhart v. Walton, 535 U.S. 212, 214 (2002); Abbott v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990).

The Commissioner has promulgated regulations setting forth a five-step sequential evaluation process for evaluating a disability claim.   See "Evaluation of disability in general," 20 C.F.R. § 404.1520.   In summary, the evaluation proceeds as follows:

1) Is the claimant engaged in substantial gainful activity?

2) Does the claimant have a medically determinable impairment or combination of impairments that satisfies the duration requirement and significantly limits his or her ability to do basic work activities?

3) Does the claimant have an impairment that meets or medically equals the criteria of a listed impairment within Appendix 1?

4) Does the claimant have the residual functional capacity to return to his or her past relevant work?

5) Does the claimant's residual functional capacity, age, education, and past work experience allow him or her to perform a significant number of jobs in the national economy?

Here, the ALJ denied Plaintiff's claim at the fifth step (Tr. 30-31).

6

Challenge to Finding No. 4: Listing 14.09

1.  Arguments of the Parties

The first of Plaintiff's three arguments contends that substantial evidence supports a finding that Plaintiff's ankylosing spondylitis meets Listing 14.09, which would support a finding of disability (DN 15-1 PageID 647-51).   Moreover, Plaintiff alleges that his condition worsened since the prior administrative decision (Id.).   Plaintiff cites to the decreased range of motion at his office visits, and "[i]f the ALJ had a question regarding whether [Plaintiff] satisfied the [range of motion] requirement in the listing, [the ALJ] should have sent [Plaintiff] to the state's own Consultative Examiner who could have easily performed a physical examination, even after the hearing itself" (Id. at PageID 649).   Plaintiff also relies upon his administrative hearing testimony, where he alleges that "his activities of daily living are greatly limited and that his wife performs all but the lightest household tasks" (Id. at PageID 650).   Finally, Plaintiff alleges that his condition has worsened since the prior administrative decision, as shown by the "partial fusion of some of the affected segments" of Plaintiff's spine (Id. at PageID 650-51).   Therefore, Plaintiff posits that the Court should find that the ALJ's decision was not supported by substantial evidence (Id. at PageID 651).

In opposition to this argument, Defendant claims that the ALJ properly considered Listing 14.09 and correctly opined that Plaintiff did not satisfy the requirements of Listing 14.09 (DN 21 PageID 677-86).   "The Commissioner acknowledges that Plaintiff's ankylosing spondylitis was confirmed by appropriate medically acceptable imaging" (Id. at PageID 678). "However, Plaintiff has not cited to any exhibits showing fixation at the required angle of flexion from the vertical position (either 45 degrees, or 30 degrees), as required by listing 14.09C" (Id.).

Even then, "if Plaintiff had fixation at the required angle of flexion, he would not satisfy listing 14.09C1 because he did not show that he had an extreme limitation in his ability to see in front, above or to the side, or argue that he was unable to ambulate effectively" (Id. at PageID 679). Plaintiff also has been able to "perform some household chores, shop in stores and take daily walks[,] . . . walk without assistance and was observed ambulating without an assistive device[, and] . . . was able to drive" (Id.) (citations omitted).

Defendant also argues that Plaintiff has failed to demonstrate "at least two affected organs or body systems with one of the organs/body systems involved to a moderate degree" (Id. at PageID 680).   While there are complaints of pain and headaches in the record, Defendant asserts that this is insufficient to show any limitation to a moderate degree (Id. at PageID 680). Moreover, Plaintiff has failed to show marked limitations in the paragraph B criteria, consistent with the ALJ's and state psychologists' opinions and contrary to Plaintiff's examining psychologist (Id. at PageID 680-81).   Any evidence of "bad days" after Plaintiff's Humira injections wear off are to be discounted, according to Defendant, as Plaintiff "did not cite to any treatment records" and Plaintiff "prepared simple meals, stopped in stores and drove" (Id. at PageID 683).

   2.  Discussion

At the third step, a claimant will be found disabled if her impairment meets or medically equals[4] one of the listings in the Listing of Impairments.   20 C.F.R. § 404.1520(a)(4)(iii); Turner

---

4    Both parties did not address whether Plaintiff's ankylosing spondylitis medically equals Listing 14.09.   Instead, Plaintiff's argument only discusses whether Plaintiff *meets* Listing 14.09 (*see* DN 15-1 PageID 647).   As the ALJ's finding of Plaintiff not medically equaling Listing 14.09 was not challenged, the Court declines to consider this aspect of the step three analysis.

v. Comm'r of Soc. Sec., 381 Fed. Appx. 488, 491 (6th Cir. 2010).   The Listing of Impairments,

set forth in Appendix 1 to Subpart P of the regulations, describes impairments the Social Security

Administration considers to be "severe enough to prevent an individual from doing any gainful

activity, regardless of his or her age, education, or work experience."   20 C.F.R. § 404.1525(a).

Each listing specifies "the objective medical and other findings needed to satisfy the criteria

of that listing."   20 C.F.R. § 404.1525(c)(3).   A claimant must satisfy all the criteria to "meet"

the listing and be deemed disabled.   *See* 20 C.F.R. § 404.1525(c)(3) and (d); Hale v. Sec'y of

Health & Human Servs., 816 F.2d 1078, 1083 (6th Cir. 1984).[5]   Listing 14.09 reads as follows:

> 14.09. *Inflammatory arthritis*.   As described in 14.00D6.   With:
>
> >    A.   Persistent inflammation or persistent deformity of:
> >    1.   One or more major peripheral weight-bearing joints resulting in the inability to ambulate effectively (as defined in 14.00C6); or
> >    2.   One or more major peripheral joints in each upper extremity resulting in the inability to perform fine and gross movements effectively (as defined in 14.00C7).
>
> >    or
>
> >    B.    Inflammation or deformity in one or more major peripheral joints with:
> >    1.    Involvement of two or more organs/body systems with one of the organs/body systems involved to at least a moderate level of severity; and
> >    2. At least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss).

---

5   An Administrative Law Judge will find that an impairment "*meets* the requirements of a listing when it satisfies all the criteria of that listing."   20 C.F.R. §§ 404.1525(c)(3) (emphasis in original); *see* Hale v. Sec'y of Health & Human Servs., 816 F.2d 1078, 1083 (6th Cir. 1984).

or

C.  Ankylosing spondylitis or other spondyloarthropathies, with:
1.  Ankylosis (fixation) of the dorsolumbar or cervical spine as shown by appropriate medically acceptable imaging and measured on physical examination at 45° or more of flexion from the vertical position (zero degrees); or
2.  Ankylosis (fixation) of the dorsolumbar or cervical spine as shown by appropriate medically acceptable imaging and measured on physical examination at 30° or more of flexion (but less than 45°) measured from the vertical position (zero degrees), and involvement of two or more organs/body systems with one of the organs/body systems involved to at least a moderate level of severity.

or

D.  Repeated manifestations of inflammatory arthritis, with at least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss) and one of the following at the marked level:
1.  Limitation of activities of daily living.
2.  Limitation in maintaining social functioning.
3.  Limitation in completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace.

20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 14.09.   Plaintiff's arguments pertain to "C" and "D" of Listing 14.09.

In the ALJ's determination, the ALJ explicitly considered Listing 14.09C and D (Tr. 19). Specifically, the ALJ concluded that "[t]he record does not show objective medical findings consistent" in finding that Plaintiff met or medically equaled Listing 14.09 (Id.).   While the ALJ did not discuss the medical evidence in the specified section, the ALJ's analysis later in the

10

determination shed light on why this conclusion was found (*see* Tr. 21-24).   *See Murry v. Colvin*, No. 3:12CV-56-S, 2013 U.S. Dist. LEXIS 64882, at *13-14 (W.D. Ky. May 6, 2013).

The ALJ recounted the prior Administrative Law Judge's decision, specifically that imaging in 2014 confirmed ankylosing spondylitis of multiple sites, as well as decreased neck flexion on examination, a positive Patrick's sign, and diffuse tenderness (Tr. 21).   Plaintiff had a moderate limitation in daily living and social functioning, but treatment notes showed "no involvement of any joints of the upper or lower extremities" (Id.).   Later imaging showed "no significant changes of the spine" (Id.).   Complaints were present of pain involving multiple joints and the spine, with difficulty bending (Id.).   However, when Plaintiff later saw a neurosurgeon, he was able to move about the room without difficulty and could get on and off the table without assistance (Id.).   An examination in November 2017 found decreased range of motion of the neck and lumbar spine but no active synovitis of the joints (Id.).   A year later, in September 2018, Plaintiff had decreased range of lotion in the neck limited to about 45° to either side, had decreased range of motion in his left elbow, both hips, and lumbar spine (Tr. 23).   Four months later, Plaintiff was examined and denied fever, weight loss, fatigue, malaise, muscle weakness, and swelling, as well as a normal active range of motion of the lumbar spine and no pain (Id.).   This active range of motion was normal at 60° (Id.).

Beginning with Listing 14.09C, the Court recognizes that the ALJ found, consistent with the previous Administrative Law Judge's determination, that Plaintiff's ankylosing spondylitis was a severe medically determinable impairment and that 2014 imaging confirmed Plaintiff's ankylosing spondylitis in multiple sites (Tr. 18, 21; *see* Tr. 85).   Plaintiff's argument discusses three instances of decreased range of motion (DN 15-1 PageID 649) (citing Tr. 362, 563, 573).

11

Only one of these instances discusses a percentage of flexion, and it is drawn from the July 2019 Functional Capacity Evaluation by Plaintiff's physical therapist (Id.) (citing Tr. 573).   The document lists a lumbar forward bending of 25% of the full range of motion and 10% back bending range of motion (Tr. 573).   This finding was at least half the range of motion in comparison to an evaluation a year and a half earlier (Id.).   The ALJ explicitly considered this evaluation, including the findings by Ben Waide, and stated that he was "not fully persuaded by the evaluation findings, which only reflect [Plaintiff]'s functioning on th[at] date" (Tr. 29).   Moreover, "the outcome of the evaluation reflect[ed] greater limitations than even [Plaintiff] testified" (Id.).   Plaintiff's memorandum even concedes that these percentages "are not noted as degrees from a vertical position" (DN 15-1 PageID 649).   However, it is not the Court's role to take these percentages and assume what the corresponding degree is.   Instead, information must be presented without the Court potentially running afoul of the rule against inserting a layperson's interpretation of raw medical data.   Moreover, the Commissioner persuasively cites a case from the Maine District Court (DN 21 PageID 678), where the Magistrate Judge opined, "However, a limitation of *movement* of the spine to only 25% of the normal range is clearly not the same as a *fixation* of the spine at least 45 degrees from the vertical position."   Plato v. Colvin, No. 1:12-cv-319-DBH, 2013 U.S. Dist. LEXIS 136611, at *25 (D. Me. July 18, 2013), *adopted by* 2013 U.S. Dist. LEXIS 136212 (D. Me. Sept. 24, 2013).   With no evidence present that would substantiate the degree requirement in 14.09C1 and 2 to support Plaintiff's claim, the ALJ's determination regarding 14.09C is supported by substantial evidence.

As for Listing 14.09D, Plaintiff argues that only his "maintaining social functioning" is limited to a marked degree (DN 15-1 PageID 650).   To substantiate this, Plaintiff points to his

testimony that his activities of daily living are "greatly limited" and Plaintiff's wife performs most of the household tasks (Id.).   Additionally, "[h]e is unable to do anything at all on his 'bad days' which he testified to being about 4-6 days a month" (Id.).   The ALJ's determination details why he was not persuaded by the allegations that precluded Plaintiff from interactions with the public: "he can shop in stores for groceries, and he has never been fired from a job because of problems getting along with others" (Tr. 28).   Additionally, Plaintiff's mother reported no issues interacting with family, friends, neighbors, or authority figures (Id.).   Plaintiff also "talks to family on the phone, see[s] his mother weekly, and goes out to eat occasionally" (Id.) (citing Tr. 329-37). Ultimately, the ALJ found a moderate limitation in interacting with others (Tr. 20).

Paragraph B2 of the paragraph B criteria discusses interactions with others and "refers to the abilities to relate to and work with supervisors, co-workers, and the public."   20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.00E2.   "Examples include: cooperating with others; asking for help when needed; handling conflicts with others; stating own point of view; initiating or sustaining conversation; understanding and responding to social cues (physical, verbal, emotional); responding to requests, suggestions, criticism, correction, and challenges; and keeping social interactions free of excessive irritability, sensitivity, argumentativeness, or suspiciousness."   Id. This portion is evaluated on the following five-point rating scale:

> a. *No limitation (or none)*.   You are able to function in this area independently, appropriately, effectively, and on a sustained basis.
>
> b. *Mild limitation*.   Your functioning in this area independently, appropriately, effectively, and on a sustained basis is slightly limited.
>
> c. *Moderate limitation*.   Your functioning in this area independently, appropriately, effectively, and on a sustained basis is fair.

13

> d. *Marked limitation*.   Your functioning in this area independently, appropriately, effectively, and on a sustained basis is seriously limited.
>
> e. *Extreme limitation*.   You are not able to function in this area independently, appropriately, effectively, and on a sustained basis.

20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.00F2a-e.

When describing social interaction, Plaintiff's wife stated, in a function report, that he visits the grocery store two to three times per week and routinely talks on the phone with his family (Tr. 279-80).   His wife cautions that Plaintiff "is very irritable most times [and] he can't be around people very long" (Tr. 281).   Plaintiff's function self-report indicates that he has isolated himself from society and has become more withdrawn (Tr. 307).   Plaintiff's mother noted that Plaintiff "goes out to eat occasionally" (Tr. 334).

However, the ALJ considered each of these reports and found that his longitudinal treatment record notes him to be pleasant, cooperative, and engaging (Tr. 20).   Moreover, the ALJ remarked that Plaintiff is able to shop "with no evidence of agoraphobia" (Id.).   The ALJ acknowledged Plaintiff's tendence to isolate himself, but this tendency did not rise to the level of a marked limitation.   As for the third-party reports, the ALJ found that they "reflect[ed] greater limitations than can be supported by objective medical evidence" and were unpersuasive (Tr. 29). The ALJ's conclusion was supported by the State psychological consultants who found Plaintiff to have a moderate limitation in interacting with others and in working in coordination with or in proximity to others without being distracted by them (Tr. 128, 138, 149, 155).   As such, the ALJ's determination is supported by substantial evidence

The Sixth Circuit has held that "[a] claimant must do more than point to evidence on which the ALJ could have based his finding to raise a 'substantial question' as to whether he has satisfied

14

a listing." <u>Smith-Johnson v. Comm'r of Soc. Sec.</u>, 579 Fed. Appx. 426, 432-33 (6th Cir. 2014) (citing <u>Sheeks v. Comm'r of Soc. Sec.</u>, 544 Fed. Appx. 639, 641-42 (6th Cir. 2013)).   Plaintiff, however, has not met this burden.   Instead, Plaintiff's arguments are characterized as an attempt for the Court to reweigh the evidence, and that is not the Court's role.   As such, the ALJ's determination, specifically as to Listing 14.09, is supported by substantial evidence and has comported with applicable law.   Thus, Plaintiff's challenge to this finding fails.

Challenge to Finding No. 5: Persuasiveness of Opinion Evidence

1.   Arguments of the Parties

Plaintiff maintains that he underwent a functional capacity evaluation ("FCE") which found worsening functional capacity (DN 15-1 PageID 653) (citing Tr. 572-77).   Plaintiff argues that the ALJ's reasoning that he was "not fully persuaded by the evaluation findings, which only reflect [Plaintiff]'s functioning on this date" is insufficient, as this evaluation was "the most thorough physical conducted of [Plaintiff] available in the record" (<u>Id.</u>) (citing Tr. 29).   Moreover, Plaintiff counters the ALJ's reasoning that a physical therapist is not an acceptable medical source by asserting that "doctors most often refer their patients to a physical therapist to conduct these types of in depth FCEs because PTs have the experience and equipment necessary to conduct these tests" (<u>Id.</u>).   Therefore, Plaintiff claims that substantial evidence does not support the ALJ's determination and remand is necessary for "appropriate consideration of the FCE" (<u>Id.</u>).

Defendant, in turn, asserts that the ALJ properly considered, and was unpersuaded by, Plaintiff's FCE (DN 21 PageID 686-87).   Defendant begins by noting that a physical therapist is not an "acceptable medical source" under the regulations and that, even when considering the information, the FCE "was inconsistent with the record evidence" (<u>Id.</u> at PageID 687) (citing

15

Tr. 29; 20 C.F.R. § 404.1502).   Moreover, the ALJ "considered the two most important factor

when determining whether Mr. Waide's opinion was persuasive (i.e., consistency and

supportability)" (Id. at PageID 688).   Thus, Defendant contends, the ALJ properly considered and

rejected the FCE and Plaintiff's argument to the contrary rests upon re-weighing evidence (Id. at

PageID 690).

    2.   Discussion

    The new regulations for evaluating medical opinions are applicable here because Plaintiff

filed his application after March 27, 2017 (Tr. 15, 264-67).   See 20 C.F.R. § 404.1520c.

However, the regulations still denote who are classified as "acceptable medical sources."   See 20

C.F.R § 404.1502(a).   These sources are 1) licensed physician (medical or osteopathic doctor);

2) licensed psychologist; 3) licensed optometrist; 4) licensed podiatrist; 5) qualified

speech-language pathologist; 6) licensed audiologist; 7) licensed advanced practice registered

nurse; and 8) licensed physician assistant.   Id. § 404.1502(a)(1)-(8).   Notably absent from this

list are physical therapists.

    The new regulations explicitly indicate "[w]e will not defer or give any specific evidentiary

weight, including controlling weight, to any medical opinion(s) or prior administrative medical

finding(s)," in the record, even if it comes from a treating medical source.   20 C.F.R.

§ 404.1520c(a).[6]   Instead, administrative law judges will now evaluate the "persuasiveness" of

medical opinions and prior administrative medical findings by utilizing the five factors listed in

paragraphs (c)(1) through (c)(5) of the regulation.   20 C.F.R. § 404.1520c(a) and (b).   The five

---

6   The language quoted above indicates that the new regulation has done away with the controlling weight rule in
    20 C.F.R. § 404.1527(c)(2).

factors are supportability, consistency, relationship with the claimant, specialization, and other factors. 20 C.F.R. § 404.1520c(c)(1)-(5). Of these five factors, the two most important are supportability and consistency. 20 C.F.R. §§ 404.1520c(a) and (b)(2). Further, the regulation requires administrative law judges to explain how they considered the supportability and consistency factors in determining the persuasiveness of the medical source's opinion. 20 C.F.R. § 404.1520c(b)(2). Notably, under the regulations administrative law judges "may, but are not required to, explain how" they considered the three other factors in determining the persuasiveness of the medical source's opinion. 20 C.F.R. § 404.1520c(b)(2).

In Plaintiff's case, the ALJ correctly noted that a physical therapist is not an "acceptable medical source" (Tr. 29); *see* 20 C.F.R § 404.1502(a). Regardless of whether physicians may, or routinely, refer patients to physical therapists, it still does not make Mr. Waide an "acceptable medical source." Even then, the ALJ considered the FCE but remained unpersuaded (Tr. 29). The ALJ recounted that "the outcome of the evaluation reflect[ed] greater limitations than even [Plaintiff] testified" (Id.). Plaintiff "testified he could lift 15 to 20 pounds, but the evaluation limited 12" lifting to 10 pounds although he could push and pull 15 pounds" (Id.); *compare* (Tr. 58) *with* (Tr. 577). Additionally, Plaintiff also "reported numbness in his bilateral feet and leg weakness, which is not reflected in the treatment record" (Tr. 29); *see* (Tr. 573). Finally, the FCE's findings, as the ALJ mentioned, only demonstrate Plaintiff's functioning on that particular day (Tr. 29).

However, while the ALJ opined these issues with the FCE, the ALJ still explicitly considered the findings and noted when the evaluation supported some of the limitations (Id.). For instance, the ALJ found that "the evaluation supports the sit/stand limitations in [Plaintiff]'s

residual functional capacity" and then incorporated the findings with the longitudinal treatment records (Id.). The FCE marked that Plaintiff could sit, stand, and walk up to one-third of a workday and can sit for up to thirty minutes before Plaintiff must change positions (Tr. 575, 577). This is consistent with the ALJ's RFC finding that Plaintiff can sit for 45 minutes at one time and stand/walk for 45 minutes at one time in combination for an eight-hour workday (Tr. 20-21).

While Plaintiff may have wanted Mr. Waide's FCE to be more persuasive in crafting the RFC limitations, the ALJ's analysis and the treatment history supports the ALJ's determination. It is not this Court's role to re-weigh the evidence and re-determine the persuasiveness of the evaluation. As such, the ALJ's determination is supported by substantial evidence and complies with applicable law. Therefore, Plaintiff's challenge to this finding is unpersuasive.

Challenge to Finding No. 5: Sedentary RFC

1.  Arguments of the Parties

Finally, Plaintiff asserts that there is not substantial evidence to support the ALJ's finding that Plaintiff could perform sedentary work (DN 15-1 PageID 651-52). Plaintiff argues that the ALJ "failed to fully consider the resulting limitations from [Plaintiff's ankylosing spondylitis] including his inability to sit, stand and/or walk for long periods of time[,]" in addition to the ALJ failure to consider Plaintiff's diabetes as a severe impairment (Id. at PageID 651). Plaintiff claims that his Humira treatment regime should be disabling in and of itself, "due to absenteeism" (Id. at PageID 652). Thus, "[t]he RFC failing to incorporate th[ese] limitation[s] is not supported by substantial evidence and must, in the least, be remanded" (Id.).

Defendant disputes Plaintiff's argument by claiming that the ALJ appropriately found a sedentary RFC with limitations after "considering the relevant medical and non-medical evidence

18

including the treatment records, diagnostic evidence, reports to healthcare professionals and Plaintiff's testimony at the hearing" (DN 21 PageID 690).   Plaintiff's arguments should be "rejected" as the ALJ considered Plaintiff's ankylosing spondylitis and history of diabetes mellitus (Id. at PageID 691).   Moreover, "there are no diagnostic studies or treatment records confirming that Plaintiff had diabetic neuropathy" (Id. at PageID 692).   As such, "[t]he ALJ carefully reviewed the evidence and reasonably concluded that despite Plaintiff's limitations, he was not disabled" (Id.).

2.  Discussion

Beginning with Plaintiff's claim regarding his diabetes and diabetic neuropathy as a severe impairment, the undersigned finds it unnecessary to decide whether the ALJ erred in failing to find Plaintiff's medically determinable impairment is severe.   The Sixth Circuit has found it "legally irrelevant" that some of a claimant's impairments are found non-severe, when other impairments are found to be severe, because a finding of severity as to even one impairment clears the claimant of step two of the analysis and the administrative law judge should consider both the severe and non-severe impairments in the remaining steps.   See Anthony v. Astrue, 266 Fed. App'x 451, 457 (6th Cir. 2008) (citing Maziarz v. Sec'y of Health & Human Servs., 837 F.2d 240, 244 (6th Cir. 1987)).   Thus, once a severe impairment is found, the administrative law judge must consider the "*combined effect*" of all the medically determinable severe and non-severe impairments in assessing a claimant's RFC.   See 20 C.F.R. §§ 404.1523(c) (emphasis added), 404.1545(a)(2); Simpson v. Comm'r of Soc. Sec., 344 Fed. App'x 181, 190-91 (6th Cir. 2009); White v. Comm'r of Soc. Sec., 312 Fed. App'x 779, 787 (6th Cir. 2009).

19

Here, the ALJ found that Plaintiff suffered from the severe impairments of ankylosing spondylitis, degenerative disc disease, depression, and anxiety (Tr. 18).   Accordingly, the ALJ continued with the remaining steps in the disability determination.   Because the ALJ considered the limitations imposed by Plaintiff's medically determinable severe and non-severe impairments in determining whether he retained sufficient residual functional capacity to allow him to return to his past relevant work and to other jobs in the national economy, the ALJ's failure to find that Plaintiff's diabetes and diabetic neuropathy are "severe" within the meaning of the regulations is not reversible error.   Maziarz, 837 F.2d at 244.

As for the ALJ's consideration of Plaintiff's ankylosing spondylitis, the ALJ's analysis is replete with discussion of Plaintiff's impairment and the medical treatment history stemming from his impairment (Tr. 21-29).   The ALJ begins by recounting the previous Administrative Law Judge's findings, specifically the confirmation of Plaintiff's ankylosing spondylitis at multiple sites and that "[t]here was mild disc space narrowing of the lumbar spine with sclerosis of the facet joints at L4-5 and L5-S1 as well as facet hypertrophy at L1-2 with suspected partial ankylosis of the sacroiliac joints bilaterally" (Tr. 21).   The ALJ then discussed Plaintiff's other impairments, as well as the updated imaging of Plaintiff's spine (Id.).

After referencing the prior disability determination, the ALJ mentions the steroid shot that was administered for Plaintiff's ankylosing spondylitis and the physical examination performed at that time (Tr. 22) (citing Tr. 362-73).   The ALJ details the September 26, 2018, consultation with Dr. Richard Bell regarding Plaintiff's ankylosing spondylitis and the results of the physical examination (Tr. 23) (citing Tr. 512-26).   Specifically, the ALJ addressed Plaintiff's lack of range of motion at various joints and spine, the partial fusion of multiple segments of Plaintiff's spine,

20

pain in Plaintiff's spine and hips, Plaintiff's bone density study results, and Plaintiff's medication plan (Id.) (citing Tr. 512-26).   This medication included the Humira injections (Id.).

Almost seven months after Plaintiff's visit with Dr. Bell, Plaintiff returned complaining of the Humira injection failing early (Tr. 23-24).   The ALJ addressed these complaints and took them into consideration when crafting the RFC (Tr. 23-25).   The ALJ found Plaintiff to have "a history of generalized back-related complaints, but his complaints are treated with prescription medication and Humira to allow for a range of sedentary work" (Tr. 25).   The ALJ noted that there was no evidence of treatment with Dr. Bell since April 2019 (Tr. 26).   As for Plaintiff's "good days" and "bad days," the ALJ explicitly opined, "There is no objective medical findings to support his bad days are of the frequency and/or severity to preclude sustained work activity" (Id.).   These findings undercut Plaintiff's claim of absenteeism and the early failing of Plaintiff's injections.

Turning to Plaintiff's final contention of the challenge, the Court has previously detailed that the ALJ's findings relating to Mr. Waide's FCE is supported by substantial evidence and comports with applicable law.   Even then, the ALJ still considered the FCE findings and utilized them in crafting Plaintiff's RFC (Tr. 29).   This was shown in the sitting, standing, and walking limitations, as well as the lifting, pushing, and pulling limitations (Id.).   As the ALJ's analysis fully discusses Plaintiff's ankylosing spondylitis, as well as his other impairments, the ALJ did not commit reversible error.   The ALJ's decision is supported by substantial evidence and complies with applicable law.

## Conclusion

As the Court noted previously, "[a]s long as substantial evidence supports the Commissioner's decision, we must defer to it, even if there is substantial evidence in the record

that would have supported an opposite conclusion."   <u>Warner v. Comm'r of Soc. Sec.</u>, 375 F.3d 387, 390 (6th Cir. 2004).   Regardless of how this Court may view the evidence, it is not this Court's place to re-try or re-evaluate the findings of the ALJ.   42 U.S.C. § 405(g).   Rather, this Court is only to find if substantial evidence exists to support the ALJ's decision and if the ALJ followed the applicable law.   <u>Id.</u>   After reviewing the record, the Court concludes that the ALJ's determination is supported by substantial evidence in the record and correctly followed the applicable law.   Therefore, Plaintiff is not entitled to relief with regard to his challenge.

ORDER

**IT IS HEREBY ORDERED** that the final decision of the Commissioner is **AFFIRMED**.

**IT IS FURTHER ORDERED** that judgment is **GRANTED** for the Commissioner.

**H. Brent Brennenstuhl**
**United States Magistrate Judge**

December 8, 2021

Copies:        Counsel of Record